**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 08-CR-0155-CVE** |
| | ) | |
| **JOHN JOSEPH GRAVITT,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**OPINION AND ORDER**

Now before the Court is Defendant's Motion to Quash and Suppress (Dkt. # 13).  Defendant

is charged with possession of marijuana with intent to distribute, possession of Ecstasy with intent

to distribute, possession of a firearm in furtherance of a drug trafficking crime, and being a felon in

possession of a firearm.  Dkt. # 2.  He argues that evidence seized during a search of his residence

should be suppressed[1] under the Fourth Amendment to the United States Constitution, because the

affidavit provided by the police officer in support of a search warrant was insufficient to establish

probable cause.

**I.**

On July 1, 2008, Tulsa Police Department ("TPD") Officer Tim Wilson[2] received an

anonymous tip of short-term traffic in and out of the residence located at 233 South 71st East

---

[1]     At the suppression hearing, defense counsel stated that she initially was asking the Court to quash the search warrant issued by the Tulsa County District Court, but agreed that the proper motion in this Court is a motion to suppress.

[2]     Wilson has worked for the TPD for ten years and currently serves as a narcotics investigator for the Special Investigation Division of the TPD.  He testified that many of his cases involve long term investigations and he has applied for approximately 150 search warrants in his capacity as a narcotics investigator.

Avenue, Tulsa, Oklahoma.  The tipper also said that he or she detected the smell of marijuana coming from the house.  Wilson followed up on the tip and conducted surveillance outside of the residence.  He observed short-term traffic that could be consistent with narcotics trafficking and he contacted a reliable confidential informant ("RCI") to arrange a controlled buy from the residence. The RCI approached the house and spoke to a resident, later identified as Jalil West, about purchasing marijuana.  West told the RCI that he was currently out of marijuana and she should have come earlier.  West informed the RCI that he was expecting more marijuana and the RCI should return later if she wanted to buy marijuana.

Wilson used the TRACIS database to gather information about West and TRACIS listed 233 South 71st East Avenue as West's address.  He also learned that West had two prior arrests for drug offenses.  Wilson showed the RCI a picture of West, and the RCI confirmed that West was the person to whom she spoke about purchasing marijuana.  Wilson went to the residence two more times to conduct surveillance, and both times he observed short-term traffic that was consistent with drug trafficking.  He also observed a white Chevrolet Monte Carlo at the residence each time he conducted surveillance.  At some point during his investigation, Wilson saw a release posted on a flat screen television at Uniform Division East stating that West and another person were wanted in connection with a charge of shooting with intent to kill.  The release contained a picture of West and another person, subsequently identified as Jonathon Gravitt, but it incorrectly identified the name of the second person.  From this release, Wilson learned that West or his associate had been seen driving a white Chevrolet Monte Carlo and the driver of this vehicle could be armed.

2

On July 9, 2008, Wilson completed an affidavit for search warrant for 233 South 71st East Avenue containing facts supporting his belief that illegal drug transactions were occurring at the subject residence.  The affidavit requested a warrant allowing police to search for:

> **FIREARMS, AMMUNITION AND PROOF OF OWNERSHIP OF SUCH ITEMS, FRUITS, INSTRUMENTALITIES USED IN THE SALE OF MARIJUANA, OTHER CONTROLLED SUBSTANCES, MONIES OR UNEXPLAINED WEALTH IDENTIFIABLE FROM THE SALE OF CONTROLLED AND DANGEROUS DRUGS, FINANCIAL RECORDS, ELECTRONIC RECORDS AND PROOF OF RESIDENCY.**

Dkt. # 14-2, at 1.  The affidavit states that police received an anonymous complaint of short-term traffic at the residence and "the smell of marijuana emanating from the residence" on July 1, 2008. Id.  Wilson stated that he conducted surveillance within 72 hours of completing the affidavit and personally observed short-term traffic in and out of the residence.  Based on his training and experience, he believed the type of short-term traffic was consistent with the sale of illegal drugs. The affidavit states that Wilson asked an RCI to execute a controlled buy of marijuana at the address, and:

> Your affiant further states that within the past 72 hours, he met with a reliable confidential informant (hereinafter referred to as RCI).  The RCI has in the past given information to your affiant and other law enforcement agencies in excess of ten occasions.  Your affiant further states that the information the RCI has given have never been untrue or misleading.  The information the RCI has provided in the past has been up to date and vital on several narcotics investigations.  Your affiant further states that the RCI has shown knowledge of the trafficking of narcotics.

Id. at 2.  According to the affidavit, the RCI approached the residence and the door was answered by West.  West told the RCI that he was out of marijuana and if she had arrived earlier she could have purchased some marijuana.  However, West stated that he was expecting to receive a new supply of marijuana and the RCI could return later.  The affidavit states that, after talking to the RCI, Wilson checked West's criminal history in the TRACIS database and learned that West has two

3

prior arrests for drug crimes.  The RCI looked at a picture of West and confirmed that West was the person she spoke to about purchasing marijuana.  TRACIS also listed West's address as 233 South 71st East Avenue.  Wilson presented his affidavit to Judge Allen Klein of the District Court of Tulsa County, and Judge Klein read and signed the search warrant for the subject residence.

Twenty to thirty minutes prior to the execution of the search warrant, the white Monte Carlo was parked in front of the residence, but it was not present when the execution of the warrant commenced.  Six TPD officers, including Wilson, and an FBI agent executed the search warrant on July 16, 2008.  Police knocked on the front door and announced their presence, but no one answered the door.  They knocked and announced a second time and heard movement inside the house.  However, no one answered the door and TPD Sergeant Cathy Reynolds ordered an officer to breach the door.  Inside the house, police found West, Kristen Davey, also known as Kristen West, and two children.  About two or three minutes after initiating the search, Gravitt pulled up in front of the house in a white Monte Carlo.  TPD Officers Jeff Eddings and Darrell Johnson were in the front yard.  They observed Gravitt step out of his car to move a bicycle from the street to the front yard and return to his car.  Eddings observed Gravitt lean over the center console.  He was aware of the release concerning a shooting with intent to kill involving a white Monte Carlo and, based on this information, felt that Gravitt's conduct threatened the safety of himself and other police officers present.  Eddings drew his gun and ordered Gravitt to step out of his vehicle.  Eddings conducted a pat down of Gravitt but did not find any weapons on Gravitt's person.  Eddings placed Gravitt in handcuffs and brought him inside the house.

Wilson read Gravitt his Miranda rights and Gravitt agreed to waive his rights.  Gravitt stated that he had lived at the house intermittently during the last seven years and that he slept in the living

room.[3]  He admitted that he sold small amounts of marijuana.  Wilson asked if any drugs were located in the house.  Gravitt stated  that blue Ecstasy tablets were located in a shoe in the southeast bedroom, and police would also find "weed" and digital scales in the same room.  Wilson requested for consent to search Gravitt's car.  Gravitt consented to the search and told Wilson that police might find a joint in the ashtray of the car.  Gravitt also stated that he kept guns in the house and car for his protection.  Wilson testified that Gravitt was cooperative and answered all of his questions without objection.

Police seized contraband and other evidence of criminal activity from the house, the white Monte Carlo, and Gravitt's person.  In the southeast bedroom, police found 67 blue Ecstasy tablets in a shoe on the floor of the closet, a baggie of marijuana in a bag of clothing on the floor, and two other baggies of marijuana.  Police found a revolver and a 9 mm semi-automatic pistol in the closet and a revolver on the floor in a bag of clothing.  They also found 20 rounds of .44 caliber ammunition in a box on a shelf in the closet.  TPD Officer Woody Wolthuis searched the white Monte Carlo and found a 9 mm semi-automatic pistol and a magazine loaded with 12 rounds of ammunition in the center console.  Wolthuis did not recover any drugs from the car.  On Gravitt's person, police found two baggies of marijuana and a baggie containing 12 Ecstasy tablets from his right front shorts pocket and $442 from his left front shorts pocket.

Following the search, police arrested Gravitt, West, and Kristen West and took all three to the David L. Moss Correctional Facility.  Wilson prepared a report concerning the search and arrests

---

[3]     At the suppression hearing, defendant admitted that he was residing at the subject residence on July 16, 2008.  Therefore, defendant's standing to challenge the validity of the search warrant is not an issue.

on July 17, 2008.  Exhibit C.  Wilson testified that the search was initiated at 1:27 p.m. on July 16, 2008 and the residence was secured around 2:00 p.m. the same day.

## II.

Defendant challenges the facial validity of the search warrant and argues that the evidence relied on in the affidavit for search warrant is insufficient to establish probable cause.  He claims that the affidavit fails to establish a sufficient nexus between the residence and the alleged criminal activity due to the vague and conclusory language of the affidavit.  He lists five separate factual statements in the affidavit and contends that, if considered independently, these statements are insufficient to establish probable cause.  The government responds that defendant is isolating the factual assertions in the affidavit but, when the evidence is considered together, the totality of the circumstances support a finding of probable cause.

The Supreme Court has stated that probable cause is a "fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules."  Illinois v. Gates, 462 U.S. 213 (1983).  In the context of search warrants, the Tenth Circuit requires that a magistrate issuing a search warrant find that "there is a fair probability that contraband or evidence of a crime will be found in a particular place."  United States v. Tisdale, 248 F.3d 964, 970 (10th Cir. 2001) (quoting Gates, 462 U.S. at 238).  "Probable cause undoubtedly requires a nexus between suspected criminal activity and the place to be searched."  United States v. Corral-Corral, 899 F.2d 927, 937 (10th Cir. 1990).  A magistrate may consider the affiant's experience as part of his probable cause determination.  United States v. Soussi, 29 F.3d 565, 569 (10th Cir. 1994).  When reviewing the search warrant affidavit, this Court must "interpret [the affidavit] in a common sense and realistic fashion."  United States v. Grimmett, 493 F.3d 1263,

6

1270 (10th Cir. 2006).  A reviewing court must show great deference to the magistrate's finding of probable cause and the magistrate's finding should be upheld if the magistrate had a "'substantial basis' for determining that probable cause existed." United States v. Perrine, 518 F.3d 1196 (10th Cir. 2008) (quoting United States v. Artez, 389 F.3d 1106, 1111 (10th Cir. 2004)).

Defendant argues that specific facts stated in the affidavit are unreliable and should not be considered when the Court determines whether probable cause existed to support the warrant. Defendant claims that the anonymous July 1, 2008 tip reporting short-term traffic and the odor of marijuana is unreliable, because the tipper is not identified and his or her qualifications to provide evidence can not be ascertained.  Defendant challenges the veracity of the RCI's statements, because the affidavit does not cite any independent evidence corroborating the RCI's statements and the affidavit provides no evidence of the RCI's training or expertise.  He also argues that the RCI's vague statements about a potential drug sale at a later time do not provide probable cause that West was actually selling marijuana from the residence.  Defendant claims that Wilson's statements based on his surveillance of West's residence are unreliable, because he did not take notes and the affidavit provides no specific evidence supporting his statement that short-term traffic was indicative of drug trafficking.  Finally, defendant claims that West's criminal history is irrelevant to the probable cause determination.

Defendant attempts to isolate each informant's statements in attempt to render the evidence unreliable, but this Court must consider the totality of the circumstances when determining whether informants' tips are reliable.  In Gates, the Supreme Court held that a reviewing court must consider the totality of the circumstances to determine whether an informant's evidence should be considered in the probable cause analysis. Gates, 462 U.S. at 230-31.  The informant's veracity and reliability

7

are relevant considerations for a court when considering an informant's evidence, but the Supreme Court rejected the use of these two factors as rigid test. Instead, "a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." Id. at 233. When the statements of the July 1, 2008 tipper and of the RCI are considered in light of other evidence, there is corroboration for each informant's statements. On July 1, 2008, police learned from an anonymous source that short-term traffic, indicative of illegal drug sales, was occurring at West's residence and the informant also noticed an odor of marijuana. This tip caused Wilson to initiate an investigation of West's residence and he personally conducted surveillance at the residence to confirm or deny the tip. After his surveillance confirmed the existence of suspicious short-term traffic, he asked an RCI to conduct a controlled buy to gather additional information. The RCI approached the residence to purchase marijuana. West indicated that he sold marijuana but was temporarily out, and the RCI could return at a later time to purchase marijuana. When viewed together, there is corroboration for the statements of both informants. When there is sufficient independent evidence to corroborate a tip, the government does not need to establish the veracity of the informant. United States v. Danhauer, 229 F.3d. 1002 (10th Cir. 2000). In this case, there is sufficient corroboration between the two informants and West's own observations and, under the totality of the circumstances, the statements of the July 1, 2008 tipper and of the RCI are reliable evidence supporting a finding of probable cause.

Defendant asserts that Wilson's conclusory statements about short-term traffic at the subject residence are insufficient to support a finding of probable cause, because he does not specify the volume of traffic or the length of his surveillance.  A high volume of short-term traffic may be evidence of drug trafficking activity if this fact is corroborated with other evidence.  United States v. Corral, 970 F.2d 719, 727 (10th Cir. 1992).  As the Court has noted, Wilson corroborated this evidence through the use of the RCI and the TRACIS database.  Wilson also conducted surveillance on three separate occasions before requesting a search warrant.  If probable cause were based solely on Wilson's statement that he observed a high level of short-term traffic on one occasion, more specificity might have been necessary.  However, Wilson's observations are corroborated by an informant who also observed short-term traffic and the RCI's encounter with West.  Defendant has cited no authority supporting his argument that such a high level of specificity is required before a police officer's observations may be considered as evidence of probable cause and the fact that Wilson did not take detailed notes of his observations does not make his statements unreliable.

Defendant claims that the RCI's evidence was so vague that no reasonable police officer would have relied on this evidence when drafting an affidavit for a search warrant.  Defendant has shown that the RCI's testimony does not conclusively establish that drug sales were occurring at West's residence, because the RCI did not actually complete a drug transaction.  However, this evidence must be considered in light of other evidence gathered by Wilson.  If Wilson had relied solely on the RCI's statements that West offered to sell her marijuana at a later date, this might have been insufficient to establish probable cause.  However, when considered along with other evidence, the RCI's statements provide corroboration for the July 1, 2008 tip and Wilson's own observations, and this evidence is relevant to the probable cause determination.

9

Defendant also argues that West's criminal history should not be considered because a suspect's criminal history, without additional supporting evidence, is not reliable evidence that a crime is actually occurring at a location.  Defendant cites United States v. Sandoval, 29 F.3d 537 (10th Cir. 1994), for the proposition that a person's criminal history, standing alone, does not show that police have reasonable suspicion to initiate an involuntary encounter with a suspect.  The government does not dispute this general proposition, but argues that it is inapplicable due to the existence of other corroborating evidence.  The Court agrees.  In Sandoval, the Tenth Circuit limited its holding to cases where a person's criminal history was the sole basis for initiating a traffic stop and noted that knowledge of a person's criminal history is relevant to a reasonable suspicion or probable cause analysis when combined with other evidence.  Id. at 542.  Wilson properly relied on West's criminal history as evidence supporting the existence of probable cause and the Court may consider this evidence in its probable cause determination.

Based on the totality of the circumstances, the Court finds that the evidence recited in the affidavit provides probable cause for issuance of a search warrant of West's residence.  Considering the July 1, 2008, tip, Wilson's surveillance, the RCI's encounter with West, the RCI's positive identification of West, and West's criminal history, there is a sufficient nexus between West's residence and the alleged crime of distributing marijuana from the residence.  Wilson testified that he was trained that anonymous tips have no credibility unless corroborated with other evidence, and he gave the July 1, 2008 tip no weight until he had an opportunity to investigate.  He performed surveillance at the residence and confirmed the existence of short-term traffic.  He further verified that short-term traffic regularly occurred at the residence by conducting surveillance on two additional occasions.  To confirm that marijuana was sold from the residence, Wilson enlisted the

10

assistance on an RCI with whom he had worked on ten prior cases and who had provided reliable information in each case.  Even though the RCI was unable to purchase marijuana from West, she confirmed that West was willing to sell her marijuana when he received additional marijuana. Wilson checked the TRACIS database and learned that West resided at 233 South 71st East Avenue and that he had two prior arrests for drug crimes.  While none of these facts would individually provide probable cause, the Court finds that the totality of the circumstances clearly show that Wilson had probable cause to request a search warrant.  Because the warrant is based on probable cause that contraband or other evidence of criminal activity would be discovered at West's residence, defendant's motion to suppress should be denied.

Both parties address the applicability of the good faith exception to the exclusionary rule in the event that the Court determined probable cause did not exist, and the Court will briefly address this issue.  Defendant argues that three exceptions to the good faith rule apply and evidence should be suppressed if the warrant was not supported by probable cause.  The government argues that Wilson relied on the warrant in good faith and, even if a Fourth Amendment violation occurred, no evidence seized during the July 16, 2008 search should be suppressed.  There is a presumption that an officer relying on a warrant is acting in good faith and, although this presumption is not absolute, it "must carry some weight" with the Court.  United States v. McKneely, 6 F.3d 1447, 1454 (10th Cir. 1993).  When an officer relies on a warrant issued by a neutral magistrate, the good faith rule should apply unless the "the underlying documents are 'devoid of factual support'" or the officer's reliance on the warrant was "wholly unwarranted."  Id.

The good faith exception applies when "'an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope,' even though the

search warrant was later deemed to be invalid." United States v. Herrera, 444 F.3d 1238, 1249 (10th Cir. 2006) (quoting United States v. Leon, 468 U.S. 897, 920 (1984)).  Excluding evidence obtained by police in good faith reliance on a search warrant would not deter future police misconduct and would penalize police for a magistrate's error in issuing the warrant. Leon, 468 U.S. at 920-21.  In Leon, the Supreme Court identified four exceptions to the good faith rule.  If a warrant is invalid, the good faith rule does prevent exclusion of evidence (1) "if the magistrate or judge issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;" (2) "where the magistrate wholly abandoned his judicial role in the manner condemned in *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319 (1979);" (3) in circumstances that "no reasonably well trained officer should rely on the warrant;" and (4) if a police officer relies on a warrant "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Id. at 922-23.  The good faith exception also does not apply if police improperly execute a warrant.  The good faith exception to the exclusionary rule is intended to prevent the exclusion of evidence when a neutral third party has committed an error, but the good faith rule does not excuse police error in exceeding the scope of a search warrant or failing to comply with other terms of the warrant. United States v. Angelos, 433 F.3d 738 (10th Cir. 2006).

In this case, Wilson relied on a warrant and the Court must presume that he was acting in good faith unless there are facts that indicate his reliance on the warrant was unreasonable.  At the suppression hearing, Wilson testified that he relied upon Judge Klein's finding of probable cause and believed he was serving a valid warrant.  Defendant has not shown that Wilson's affidavit was devoid of factual support or that his reliance on the warrant was wholly unwarranted.  Wilson

12

produced evidence of short-term traffic at West's residence that was consistent with drug trafficking. He conducted his own surveillance to confirm this fact and used an RCI to determine if drug sales were taking place at the subject residence. He also confirmed the identity of West with the RCI and checked West's criminal history. Therefore, Wilson's affidavit states sufficient facts to show that his reliance on the warrant was reasonable and the good faith exception applies to this case.

Defendant argues that three exceptions to the good faith rule apply. First, he argues that the magistrate wholly abandoned his judicial role by signing the warrant. However, this exception applies only when the magistrate acts outside of his or her judicial capacity, not when the magistrate simply erred by executing a warrant lacking in probable cause. See Lo-Ji Sales, Inc. v. New York, 442 U.S. 319 (1979) (magistrate abandons his neutral and detached role as judicial officer by participating in execution of search warrant). Second, he claims that the warrant was so lacking in indicia of probable cause that no reasonable police officer would have relied on the warrant. Considering the Court's finding that probable cause existed, this argument is meritless. Third, defendant argues that the warrant was facially invalid and a reasonable police officer could not have relied on the warrant. However, defendant has cited no defect in the warrant, other than the alleged lack of probable cause, and the warrant is not facially invalid. Even if the Court were to find that Wilson's affidavit does not support a finding of probable cause, the good faith rule applies and evidence seized during the search of West's residence should not be suppressed.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Quash and Suppress (Dkt. # 13) is **denied**.

**DATED** this 31st day of October, 2008.

_Claire V Eagan_
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT